UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 13

STEPHEN J. AYOUB,                                   Case No. 8:22-bk-3226-MGW

      Debtor.

_____/    **EMERGENCY HEARING REQUESTED**

### DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO SELL <u>REAL PROPERTY FREE AND CLEAR OF LIENS</u>
#### (3333 San Jose St., Clearwater, Florida 33759)

Stephen J. Ayoub (the "**Debtor**"), respectfully requests that this Court authorize the Debtor to sell any of his interests in real property free and clear of liens and encumbrances, and set a hearing on this Motion for **August 25, 2022, at 9:30 a.m.** in Courtroom 8A, Sam M. Gibbons United States Courthouse, Tampa, Florida, and as grounds therefore would show as follows:

### <u>Background</u>

1.    The Debtor owns real property located at 3333 San Jose St., Clearwater, FL 33759 and more particularly described as:

> LOTS 163 THROUGH 168 OF DEL ORO GROVES, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 12, PAGE 2 OF THE PUBLIC RECORDS OF PINELLAS COUNTY, FLORIDA.

(the "**Real Property**").

2.    The Real Property is encumbered by liens in favor of Wilmington Savings Fund Society, FSB as Owner Trustee of the Residential Credit Opportunities Trust VI-A ("**Wilmington**").

3.    Wilmington initiated foreclosure proceedings against the Debtor in Florida's Sixth Judicial Circuit Court in and for Pinellas County, Florida, case styled, *Wilmington Savings Fund*

*Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust, VI-A v. Stephen J. Ayoub, et. al.*, case number 16-008022-CI (the "**Wilmington Case**").

4.      On or about February 21, 2019, the Debtor and ABS REO Trust II, Wilmington's predecessor in interest, entered into a *Joint Stipulation as to Settlement and Waiver of Defenses* (the "**Stipulation of Settlement**") whereby the Debtor agreed to pay $490,000.00 by May 10, 2019, to ABS REO Trust II in full satisfaction of the debt in the Wilmington Case. The Stipulation of Settlement is attached as **Exhibit A**. On May 10, 2019, the Debtor caused $490,000.00 to be wired to ABS REO Trust II.  However, on or about May 17, 2019, ABS REO Trust II refused to accept the wire and returned the wire.  Subsequently, Wilmington became the real party in interest as the plaintiff in the Wilmington Case.

5.      On June 27, 2022, the state court entered a Uniform Final Summary Judgment of Foreclosure in the Foreclosure Case providing for foreclosure of the Property (the "**Wilmington Final Judgment**"). The Wilmington Final Judgment awarded Wilmington $1,268,996.62 and set a foreclosure auction for August 11, 2022.  The Debtor timely filed a notice of appeal in the Wilmington Case (the "**Appeal**").

6.      On August 10, 2022 (the "**Petition Date**"), the Debtor filed his voluntary petition for relief under Chapter 13 of Title 11, United States Code. (the "**Bankruptcy Code**").

7.      David Stein (the "**Buyer**") and the Debtor executed an "As Is" Residential Contract for Sale and Purchase for the Real Property (the "**Contract**") in the amount of $1,050,000.00, a copy of which is attached as **Exhibit B**..  Additionally, the Buyer paid $50,000 to extend the closing, for a total of $1,050,000.00 (the "**Purchase Price**").  The Buyer has deposited $160,000.00 with an escrow agent (the "**Deposit**"). The Debtor submits that the Purchase Price represents the fair market value of the Real Property.

2

8.      Prepetition, the Debtor and the Buyer entered into an Addendum to Contract to Purchase Property: Use and Occupancy Agreement dated August 26, 2020 (the "**Occupancy Agreement**"), a copy of which is attached as **Exhibit C**. Per the terms of the Occupancy Agreement, the Buyer is permitted to occupy the Real Property until the Closing Date. Further, the Buyer is not obligated to pay rent or monies "as long as Buyer's funds remain in escrow until closing."

9.      On June 28, 2022, the Debtor and the Buyer executed an Extension Addendum to Contract with a proposed closing date of August 25, 2022. The Extension Addendum to Contract is attached as **Exhibit D**.

10.     Due to the Wilmington Final Judgment, on August 22, 2022, the Buyer informed the Debtor that if the parties cannot close by August 25, 2022, the Buyer is going to cancel the Contract and demand return of the Deposit per the terms of the Contract.

11.     Consummation of the proposed sale will incur certain expenses, including title insurance, and other normal costs of closing, payment of which should be made from the sales proceeds (the "**Closing Costs**").

**<u>Relief Requested and Basis for Relief</u>**

12.     The Debtor requests authority to sell the Real Property for the Purchase Price pursuant to § 363(b) and (f) of the Bankruptcy Code free and clear of all liens, claims, encumbrances, and interests. Further, the Debtor requests that the net sales proceeds in excess of $490,000.00 be deposited in the trust account of Stichter, Riedel, Blain & Postler, P.A. pending resolution of the Appeal and further order of the Court.

13.     Section 363(b)(1) states that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor must demonstrate a sound business justification for a sale or use of assets

outside the ordinary course of business.  *See*, *e.g.*, *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale and the transaction is in good faith).  Courts usually defer to the business judgment of a debtor in deciding whether or not to authorize a debtor to sell property outside the ordinary course of business.  *See, e.g.*, *In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983); *In re Mason's Nursing Center, Inc.*, 73 B.R. 360, 362 (Bankr. S.D. Fla. 1987).

14.    The Real Property is not necessary for the Debtor's reorganization.  Allowing the Real Property to be sold will reduce the claims against the Debtors' estate and will relieve the Debtor of the burdens of property ownership, such as insurance and property taxes.  The Debtor believes that the proposed sale will achieve maximum value for the Real Property.

15.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

2)    such entity consents;

3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4)    such interest is in *bona fide* dispute; or

5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest

4

11 U.S.C. § 363(f); *see also Contrarian Funds, LLC v. Westpoint Stevens, Inc. (In re Westpoint Stevens, Inc.)*, 333 B.R. 30, 50 (S.D.N.Y. 2005) ("Where . . . a sale is to be free and clear of existing liens and interests other than those of the estate, one or more of the criteria specified in section 363(f) of the statute must also be met."), *rev'd in part on other grounds* 600 F.3d 231 (2d Cir. 2010). This provision is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

16.    Further, Section 363(f)(4) is satisfied because such interest is in bona fide dispute. Wilmington previously entered into a Stipulation of Settlement whereby Wilmington agreed to accept $490,000 in satisfaction of its claim, but Wilmington rejected the tender. Further, the Wilmington Case is on Appeal.

17.    Further, in a judicial foreclosure proceeding under Florida state law, lienholders could be compelled to accept less than full payment on account of their liens. Because the lienholders "could be compelled under state law to accept general unsecured claims to the extent the sale proceeds are not sufficient to pay their claims in full, section 363(f)(5) is satisfied." *In re Boston Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010); *accord In re Jolan, Inc.*, 403 B.R. 866, 870 (Bankr. W.D. Wash. 2009).

18.     The Debtor submits that the sale of the Real Property free and clear of liens, claims, encumbrances, and interests, and the disposition of proceeds as set forth herein, is in the best interest of the estate.

WHEREFORE, the Debtor respectfully request that this Court (i) authorize the sale of the Real Property for the Purchase Price, free and clear of liens, claims, encumbrances, and interests, (ii) authorize the Debtor to pay at closing Wilmington the amount of $490,000.00 (the undisputed amount of Wilmington's lien), (iii) to pay reasonable and customary Closing Costs without further order of this Court, (iv) to escrow the remaining net sales proceeds in the trust account of Stichter, Riedel, Blain, and Postler, P.A. pending further order of this Court, and to (v) provide such other and further relief as is just.

## CERTIFICATE OF GOOD FAITH

The undersigned contacted Wilmington's counsel prior to filing this motion.  Wilmington has indicated that it will not consent to the relief requested herein.

DATED August 24, 2022

/s/ *Mark F. Robens*
Mark F. Robens (FBN 108910)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Email: mrobens@srbp.com
Attorneys for Debtor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing *Motion for Authority to Sell Real Property Free and Clear of Liens (3333 San Jose Street, Clearwater, Florida 33759)* has been furnished on August 24, 2022, by the Court's CM/ECF Noticing System to all parties receiving CM/ECF noticing, by electronic mail or by U.S. Mail to:

LBR 1007-2 Parties in Interest matrix

Wilmington Savings Fund Society, FSB
as Owner Trustee of the Residential Credit
Opportunities Trust VI-A
c/o Christian Savio, Esq.
Law Offices of Mandel, Manganelli & Leider, P.A.
 1900 NW Corporate Blvd., Suite 305W
Boca Raton, FL 33431
Telephone: (561) 826-1740
CSavio@mml-pa.com

*/s/ Mark F. Robens*
Mark F. Robens

# Exhibit "A"

EXHIBIT B

JOINT STIPULATION AS TO SETTLEMENT AGREEMENT AND WAIVER OF DEFENSES

TO:

SECOND AMENDED COMPLAINT

CASE NO.:  20-002473-CI
STEPHAN AYOUB V. ABS REO TRUST II

Filing # 85458374 E-Filed 02/25/2019 04:01:38 PM

IN THE CIRCUIT COURT OF THE
6TH JUDICIAL CIRCUIT IN AND
FOR PINELLAS COUNTY, FLORIDA

CASE NO. 16-008022-CI (20)

ABS REO TRUST II,
                Plaintiff,

-vs-

STEPHAN J. AYOUB A/K/A STEPHEN J. AYOUB A/K/A
STEPHEN AYOUB; UNKNOWN SPOUSE OF STEPHAN J. AYOUB
A/K/A STEPHEN J. AYOUB A/K/A STEPHEN AYOUB; JANIS
ENGLISH; THE BANK OF TAMPA; DEL ORO GROVES ESTATES
ASSOCIATION INC.; UNKNOWN PARTIES CLAIMING BY,
THROUGH, UNDER OR AGAINST THE ESTATE OF DENICE
GALBREATH, DECEASED, WHETHER SAID UNKNOWN
PARTIES CLAIM AS SPOUSES, HEIRS, DEVISEES, GRANTEES,
ASSIGNEES, CREDITORS, TRUSTEES, OR OTHER CLAIMANTS;
UNKNOWN TENANT #1; UNKNOWN TENANT #2,
                Defendants.

_____/

<u>JOINT STIPULATION AS TO SETTLEMENT AND WAIVER OF DEFENSES</u>

      STEPHAN J. AYOUB A/K/A STEPHEN J. AYOUB A/K/A STEPHEN AYOUB
("Defendant") and ABS REO TRUST II ("Plaintiff"), by and through their undersigned counsel, hereby
stipulate and agree that pursuant to a Settlement Agreement entered into by and between the Parties,
Defendant hereby agrees to withdraw his defenses to Plaintiff's Verified Amended Complaint to
Foreclose Mortgage. Further, as set forth in the Settlement Agreement, the Parties agree that Defendant
shall have until May 10, 2019 to provide payoff funds in order to complete a "short payoff." If
Defendant does not provide the payoff funds as set forth in the Settlement Agreement, then after notice
to Defendant, Defendant consents to the entry of a Final Judgment of Foreclosure in favor of Plaintiff.

Russell L. Cheatham, III, P.A.
5546 First Avenue North
St. Petersburg, FL 33710

By: _____
Russell L. Cheatham, III, Esq.
Florida Bar No.: 393630
Dated: _____

Weitz & Schwartz, P.A.
900 S.E. 3rd Avenue, Suite 204
Fort Lauderdale, FL 33316

By: _____
Michael W. Hosford, Esq.
Florida Bar No.: 020960
Dated: _____

I HEREBY CERTIFY that a copy of the foregoing has been furnished to all parties as indicated on

the Service List attached hereto, this 25th day of February, 2019.

WEITZ & SCHWARTZ, P. A.
Attorneys for Plaintiff
900 S. E. 3rd Avenue, Suite 204
Fort Lauderdale, FL 33316
Telephone (954) 468-0016

By:  /s/ Michael N. Hosford
Steven C. Weitz, Esq., FBN:  788341
stevenweitz@weitzschwartz.com
Sarah T. Weitz, Esq., FBN:  864501
sarahweitz@weitzschwartz.com
Michael N. Hosford, Esq., FBN: 020960
mhosford@weitzschwartz.com
Nathan L. Wood, Esq., FBN: 123968
nathan@weitzschwartz.com

**SERVICE LIST**
ABS REO Trust II vs. Stephan J. Ayoub. et al.
Case No. 16-008022-CI (20)

Via Email:
Russell L. Cheatham, III, Esq.
Russell L. Cheatham, III, P.A.
5546 First Avenue North
St. Petersburg, FL 33710
russ@russellcheatham.com
Courtdocuments@RussellCheatham.com
*Attorney for Stephan J. Ayoub a/k/a Stephen J. Ayoub a/k/a Stephen Ayoub*

Steven F. Thompson, Esq.
Steven F. Thompson, P.A.
412 East Madison Street, Suite 900
Tampa, FL 33602
sthompson@thompsonbrookslaw.com
*Attorney for The Bank of Tampa*

Via U.S. Mail:
Janis English
1586 Linwood Drive
Clearwater, Florida 33755

Unknown Heirs of Denice Galbreath
3333 San Jose Street
Clearwater, FL 33759

Del Oro Groves Estates Association, Inc.
3325 San Bernadino Street
Clearwater, FL 33759

Unknown Spouse of Stephan J. Ayoub A/K/A
Stephen J. Ayoub A/K/A Stephen Ayoub
3333 San Jose Street
Clearwater, FL 33759

Unknown Tenant #1
3333 San Jose Street
Clearwater, FL 33759

Unknown Tenant #2
3333 San Jose Street
Clearwater, FL 33759

EXHIBIT "A" (Page 3 of 3)

# Exhibit "B"

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF



## "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

1* **PARTIES:** _____ Stephen Ayoub _____ ("Seller"),
2* and _____ Darrel Stein _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*    (a) Street address, city, zip: _____ 3333 SAN JOSE ST, CLEARWATER, FL 33759 _____
8*    (b) Located in: ___ Pinellas ___ County, Florida. Property Tax ID #: ___ 09-29-16-20826-000-1630 ___
9*    (c) Real Property: The legal description is DEL ORO GROVES LOTS 163 THRU 168 _____
10   _____
11   _____
12       together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13       attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14       by other terms of this Contract.
15    (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16       which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17       purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18       drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19       and other access devices, and storm shutters/panels ("Personal Property").
20*      Other Personal Property items included in this purchase are: washer & dryer, pool equipment & accessories
21   _____
22       Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*    (e) The following items are excluded from the purchase: _____
24   _____

25                              **PURCHASE PRICE AND CLOSING**

26* **2. PURCHASE PRICE** (U.S. currency):.................................................................. **$** ___1,050,000.00___
27*    (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ....... $ ___20,000.00___
28       The initial deposit made payable and delivered to "Escrow Agent" named below
29*       **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within _____ (if left
30       blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31       OPTION (ii) SHALL BE DEEMED SELECTED.
32*       Escrow Agent Information: Name: _____ Fidelity National Title _____
33*       Address: _____ 28059 US-19, Clearwater, FL 33761 _____
34*       Phone: (727) 791-0007  E-mail: lganno@fnf.com  Fax: _____
35*    (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*       days after Effective Date ..........................................................................$ _____
37       (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*    (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ......... _____
39*    (d) Other: _____ ............... $ _____
40    (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*       transfer or other **COLLECTED** funds .......................................................... $ ___1,030,000.00___
42       NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44    (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*       ___ to be determined ___, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46       Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47       the counter-offer is delivered.
48    (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49       initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51       and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*      ("Closing") on ___ on or before 6.30.2020 ___ ("Closing Date"), at the time established by the Closing Agent.

FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 082550-000158-3807732

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f6ba7902 ]

Form Simplicity

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

**FINANCING**

**8. FINANCING:**

☒ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☐ (b) This Contract is contingent upon Buyer obtaining approval of a ☐ conventional ☐FHA ☐ VA or ☐other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☐fixed, ☐adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

(i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

(ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

(iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller. (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:

(1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
(2) terminate this Contract.

Buyer's Initials _DS_ _____     Page **2** of **12**     Seller's Initials _SA_ _____

FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 082550-000158-3807732

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f9ba7902 ]

Form Simplicity

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

109    (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110  expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111  will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112  by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

113    (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114  default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115  from all further obligations under this Contract.

116    (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117  fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118  default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119  have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120  of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121  Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122  Contract.

123*  ☐ (c) Assumption of existing mortgage (see rider for terms).

124*  ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

125  **CLOSING COSTS, FEES AND CHARGES**

126  **9.  CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127    (a)  **COSTS TO BE PAID BY SELLER:**
128    • Documentary stamp taxes and surtax on deed, if any      • HOA/Condominium Association estoppel fees
129    • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
130    • Title search charges (if Paragraph 9(c)(iii) is checked)      • Seller's attorneys' fees
131*    • Municipal lien search (if Paragraph 9(c)(ii) is checked)    • Other:_____
132    If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133    a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134    Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135    such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

136    (b)  **COSTS TO BE PAID BY BUYER:**
137    • Taxes and recording fees on notes and mortgages        • Loan expenses
138    • Recording fees for deed and financing statements        • Appraisal fees
139    • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
140    • Survey (and elevation certification, if required)        • Buyer's attorneys' fees
141    • Lender's title policy and endorsements          • All property related insurance
142    • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
143    • Municipal lien search (if Paragraph 9(c)(ii) is checked)        9 (c)(iii) is checked.)
144*    • Other:_____

145*    (c)  **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146    then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147    licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148    Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149    obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150    copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151    premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152    forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153    and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154    closing disclosures and other closing documents.  For purposes of this Contract "municipal lien search" means a
155    search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156    liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157    **(CHECK ONE):**
158*    ☒ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159    premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160    endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161    provider(s) as Buyer may select; or

162*    ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163    services related to Buyer's lender's policy, endorsements and loan closing; or

Serial#: 082550-000158-3807732

Form Simplicity

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f9ba7902 ]

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

164* ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]**: Seller shall furnish a copy of a prior owner's policy
165 of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
166 which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
167 municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
168* policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
169 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

170 (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
171 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
172 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

173* (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
174* _____ at a cost not to exceed $_____. A home
175 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
176 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

177 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
178 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
179 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
180 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
181 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
182 be paid in installments **(CHECK ONE):**
183* ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
184 Installments prepaid or due for the year of Closing shall be prorated.
185* ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
186 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
187 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
188 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

189 ## DISCLOSURES

190 **10. DISCLOSURES:**
191 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
192 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
193 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
194 radon and radon testing may be obtained from your county health department.
195 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
196 does not know of any improvements made to the Property which were made without required permits or made
197 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
198 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
199 written documentation or other information in Seller's possession, knowledge, or control relating to
200 improvements to the Property which are the subject of such open permits or unpermitted improvements.
201 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
202 desires additional information regarding mold, Buyer should contact an appropriate professional.
203 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
204 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
205 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
206 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
207 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
208 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
209 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
210* may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
211 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
212 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
213 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
214 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
215 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
216 rating.
217 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
218 required by Section 553.996, F.S.

Buyer's Initials ____DS____ _____    Page **4** of **12**    Seller's Initials ___SA___ _____
FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 082550-000158-3807732

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f6ba7902 ]

Form Simplicity

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

### PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have _____ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,

Serial#: 082550-000158-3807732

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f6ba7902 ]

Form Simplicity

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

274     consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275     or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276     expend, any money.
277   (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278     cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279     to Buyer.

280                           **ESCROW AGENT AND BROKER**

281 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282     and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283     within the State of Florida, and subject to **COLLECTION**, disburse them in accordance with terms and conditions
284     of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
285     demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
286     take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
287     liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
288     the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
289     the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
290     dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
291     notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
292     extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
293     comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
294     mediation, arbitration, interpleader or an escrow disbursement order.
295     In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
296     or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
297     attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
298     shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
299     Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
300     termination of this Contract.
301 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302     square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303     professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304     and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305     Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306     public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
307     **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
308     **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
309     **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310     individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311     employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312     all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313     or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314     information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315     failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316     beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317     recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318     provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319     Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320     paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321     Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322     will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

323                      **DEFAULT AND DISPUTE RESOLUTION**

324 **15. DEFAULT:**
325   (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326     including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327     for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328     in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

Buyer's Initials ____ DS ____          Page **6** of **12**          Seller's Initials ____ SA ____

FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 082550-000158-3807732

Form Simplicity

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f6ba7902 ]

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

329 this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
330 rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
331 be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
332 shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

333 (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
334 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
335 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
336 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
337 performance.

338 This Paragraph 15 shall survive Closing or termination of this Contract.

339 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
340 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
341 as follows:

342 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
343 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
344 16(b).

345 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
346 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
347 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
348 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
349 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
350 16 shall survive Closing or termination of this Contract.

351 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
352 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
353 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
354 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
355 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

356 **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

357 **18. STANDARDS:**

358 **A. TITLE:**

359 **(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
364 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369 subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370 addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing
371 any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
372 be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373 with law.

374 **(ii) TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
376 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
377 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
378 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
379 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
380 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
381 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
382 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,



FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 082550-000158-3807732

Form Simplicity

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f6ba7902 ]

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

383    deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
384    Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385    (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
386    passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387    electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388    further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and
389    Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390    thereby releasing Buyer and Seller from all further obligations under this Contract.
391    **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392    encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393    governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394    such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395    than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396    Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397    prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398    preparation of such prior survey, to the extent the affirmations therein are true and correct.
399    **C.   INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400    the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
401    **D.   LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402    tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403    deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404    the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405    and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406    Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407    6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408    within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409    Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410    this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411    thereunder.
412    **E.   LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413    statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414    repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415    improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416    general contractors, subcontractors, suppliers and materialmen in addition  to Seller's lien affidavit setting forth
417    names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418    for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419    paid or will be paid at Closing.
420    **F.   TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421    than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422    specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423    on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424    is located) of the next business day.
425    **G.   FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426    liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427    services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428    Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429    unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430    effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431    Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432    performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433    this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434    written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435    further obligations under this Contract.
436    **H.   CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
437    personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
438    described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 082550-000158-3807732

Form Simplicity

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f6ba7902 ]

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

439 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440 Contract.
441 **I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442 (i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446 means.
447 (ii)   **CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of
448 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451 the survey, flood elevation certification, and documents required by Buyer's lender.
452 (iii) **FinCEN GTO NOTICE.  If Closing Agent is required to comply with the U.S. Treasury Department's**
453 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456 **report of said information to IRS.**
457 (iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460 **closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
461 **J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.
472 **K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486 maximum allowable discounts and applicable homestead and other exemptions.  A tax proration based on an
487 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488 shall survive Closing.
489 **L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491 including a walk-through (or follow-up walk-through if necessary) prior to Closing.
492 **M.   RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

Form Simplicity

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f6ba7902 ]

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

496  cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
497  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
498  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
499  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
500  Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
501  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.
502  **N.   1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
503  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
504  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
505  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
506  upon, nor extended or delayed by, such Exchange.
507  **O.   CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
508  **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
509  be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
510  the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
511  the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
512  if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
513  (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
514  shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures,
515  as determined by Florida's Electronic Signature Act and other applicable laws.
516  **P.   INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
517  of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
518  representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
519  in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
520  to be bound by it.
521  **Q.   WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
522  Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
523  rights.
524  **R.   RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
525  or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
526  **S.   COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
527  **received, including Deposits, have become actually and finally collected and deposited in the account of**
528  **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
529  **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
530  **T.   RESERVED.**
531  **U.   APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
532  of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
533  county where the Real Property is located.
534  **V.   FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
535  Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
536  of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
537  (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
538  from the IRS authorizing a reduced amount of withholding.
539  (i)   No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
540  provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
541  stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
542  home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
543  shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
544  to the IRS.
545  (ii)   If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
546  or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
547  reduced sum required, if any, and timely remit said funds to the IRS.
548  (iii)   If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
549  provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
550  received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
551  on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
552  escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f9ba7902 ]

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

553  parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554  directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555  (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556  transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557  applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558  disbursement in accordance with the final determination of the IRS, as applicable.
559  (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560  8288 and 8288-A, as filed.
561  **W.  RESERVED**
562  **X.  BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563  *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564  *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565  *subsequently discovered by the Buyer or anyone claiming* by, through, under or against the Buyer. *This*
566  *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567  *Closing.*

**ADDENDA AND ADDITIONAL TERMS**

569*  **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570  Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ K. RESERVED | ☐ T. Pre-Closing Occupancy |
| ☒ B. Homeowners' Assn. | ☐ L. RESERVED | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control | ☒ W. Back-up Contract |
| ☐ E. FHA/VA Financing | Line | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners/Flood Ins. | ☐ Q. Housing for Older Persons | ☐ AA. Licensee Property Interest |
| ☐ I. RESERVED | ☐ R. Rezoning | ☐ BB. Binding Arbitration |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | ☐ CC. Miami-Dade County |
| | | Special Taxing District |
| | | Disclosure |
| | | ☐ Other: _____ |
| | | _____ |
| | | _____ |

571*  **20. ADDITIONAL TERMS:** _____
572  _____
573  _____
574  _____
575  _____
576  _____
577  _____
578  _____
579  _____
580  _____
581  _____
582  _____
583  _____
584  _____
585  _____
586  _____
587  _____

**COUNTER-OFFER/REJECTION**

589*  ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590  deliver a copy of the acceptance to Seller).
591*  ☐ Seller rejects Buyer's offer.

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f6ba7902 ]

Form Simplicity

DocuSign Envelope ID: FA180C95-37CA-4F30-BD47-48BE17A3BAAF

592  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594  **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595  *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596  *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597  *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598  *interested persons.*

599  AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600  TO BE COMPLETED.

601*  Buyer: _Darrel Stein_____  Date: _3/11/2020_____
            EB2AE2F5EB1F4E8...

602*  Buyer: _____  Date: _____

603*  Seller: _Stephen Ayoub_____  Date: _03/13/2020 12:43 PM
                                                              EDT_____

604*  Seller: _____  Date: _____

605  Buyer's address for purposes of notice          Seller's address for purposes of notice
606* _____          _____
607* _____          _____
608* _____          _____

609  **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610  entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611  Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612  agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613  retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614  made by Seller or Listing Broker to Cooperating Brokers.

615*  _____Lance Willard_____          _____Janice Mason **/Pam Smith**
616  **Cooperating Sales Associate, if any**          **Listing Sales Associate**

617*  _____Charles Rutenberg Realty_____          _____Coastal Properties Group_____
618  **Cooperating Broker, if any**                  **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 082550-000158-3807732

Electronically Signed using eSignOnline™ [ Session ID : f78f2ee2-2567-4892-9453-eaa7f9ba7902 ]

Form Simplicity

# Exhibit "C"

DocuSign Envelope ID: FF1EE81E-603B-4C77-AB34-2F3B598B94A6

## ADDENDUM TO CONTRACT TO PURCHASE PROPERTY

## Use and Occupancy Agreement

Concerning Property located at: **3333 San Jose Street, Clearwater, FL 33759**

Date: August 26, 2020

The undersigned Buyer and Seller, for good and valuable consideration, the adequacy of which is hereby acknowledged, agree as follows:

1. **Occupancy and Term** - The Buyer shall have the right to use and occupy the Property prior to closing starting on  August 31, 2020 continuing until the Closing Date, to be determined.

2. **Possession** - The taking of possession of the Property by the Buyers shall constitute acceptance of the Property As Is and shall satisfy Seller's obligations under the terms of the Purchase and Sale Agreement.

3. **Payments** - The Buyer agrees to pay the Seller under the following terms as consideration for the use and occupancy of the property: No Rent or monies are to be paid as long as Buyer's funds remain in escrow until closing.

4. **Utilities and Maintenance** - The Buyers shall pay all amounts due for all utilities for the Property, including electricity, water, garbage, gas and any normal maintenance, including lawn, pest control, security monitor, internet and cable so long as they occupy the Property. The Buyer shall be responsible, at its sole cost and expense, for maintenance and repairs of the mechanical (which shall mean heating/cooling and plumbing), electrical, and structural systems of the Property.

5. **Insurance** - The Buyers agree to obtain and maintain renters insurance  at their sole cost and expense until closing.  Seller will continue to maintain a Homeowners Insurance policy which covers the Buyer's liability for the use and occupancy of the Property until closing.

6. **No Tenancy** - The Buyers agree that no tenancy of any nature has been established by the execution of this Agreement by the Seller.

7. **Damages** - All losses or damages incurred from the occupancy date of August 31, 2020 and not covered by the Homeowner's insurance policy shall be the sole responsibility of the Buyer.

8. **Termination Date** - In the event the closing does not occur by February 28, 2021, this agreement can be extended with all parties in agreement.   There shall be no termination of occupancy for as long as Buyer's monies remain in escrow.

9. **Additional Terms** – The Seller agrees to assume any and all expenses associated in obtaining and providing Buyer with Clear Title.  The Seller and Buyer agree this agreement is being entered into for the sole purpose to allow Buyer to move in on August 31, 2020 while Seller is able to deliver Clear Title to Buyer as soon as possible and without time limits, depending on receiving proper and accurate required documents for the Title Company.  All other terms and conditions of the original purchase agreement remain the same.



DocuSign Envelope ID: FF1EE81E-603B-4C77-AB34-2F3B598B94A6

10. **Escrow Funds** -  Jason Goldstein,ESQ will hold Escrow  in the amount of $160,000.00 and will be non-refundable if the Buyer defaults or chooses not to move forward with closing once clear title has been obtained.

11. **Severalty** - The singular terms Buyer and Seller are used herein collectively to include, jointly and severally each of the undersigned in the singular or plural.

12. **Governing Law** - This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

Date this _____30_____ day of August 2020.

SELLER:

_____

**STEPHEN AYOUB**

BUYER:

_____    8/30/2020

**DARREL STEIN**

# Exhibit "D"

**Extension Addendum to Contract**



The following date and/or time period(s) of the Contract for Residential Sale and Purchase,  Residential Contract for Sale and Purchase, Vacant Land Contract, or Commercial Contract with the Effective Date of _03/17/2020_____,

between _Stephen Ayoub_____ ("**Seller**")

and _____Darrel Stein_____ ("**Buyer**")

concerning the Property  located at _3333 San Jose St., Clearwater, FL 33759_____

is hereby extended. (check whichever apply)

☒ **Closing Date. Seller** and **Buyer** agree to extend the Closing Date until _on or before August 25, 2022_____ .

☐ **Financing Period. Seller** and **Buyer** agree to extend the Commitment Period, Loan Approval Date, or Financing Period for an  additional _____ days or until _____ .

☐ **Inspection Period. Seller** and **Buyer** agree to extend the Inspection Period for an additional _____days or until _____ .

☐ **Title Cure Period. Seller** and **Buyer** agree to extend the Curative Period or Cure Period for an additional _____days or until _____ .

☐ **Short Sale Approval Deadline. Seller** and **Buyer** agree to extend the Approval Deadline for an additional _____ days or until _____ .

☐ **Feasibility Study Period. Seller** and **Buyer** agree to extend the Feasibility Study Period for an additional _____ days or until _____ .

☐ **Due Diligence Period. Seller** and **Buyer** agree to extend the Due Diligence Period for an additional _____ days or until _____ .

This extension will be on the same terms and conditions as stated in the original contract except:

All other non-conflicting terms of the contract remain in full force and effect.

| ┌ DocuSigned by:<br>_Steve Ayoub_<br>└ 1A7CEADD63D946D... | 6/16/2022 | ┌ DocuSigned by:<br>_Darrel Stein_<br>└ ...8F6A8F5A556406... | 6/28/2022 |
|---|---|---|---|
| **Seller** | Date | **Buyer** | Date |

| | | | |
|---|---|---|---|
| **Seller** | Date | **Buyer** | Date |

                                                                                          ©2019 Florida Realtors®

Label Matrix for local noticing
113A-8
Case 8:22-bk-03226-MGW
Middle District of Florida
Tampa
Wed Aug 24 13:02:05 EDT 2022

Stephen J. Ayoub
700 N. Osceola Ave., #602
Clearwater, FL 33755-3817

Wilmington Savings Fund Society, FSB, as Own
c/o Christian Savio
1900 NW Corporate Blvd. Suite 305W
Boca Raton, FL 33431-7340

ABS REO Trust II
ABS Service Mgt Trust
c/o Weitz & Schwartz, P.A.
900 S.E. 3rd Ave., #204
Fort Lauderdale, FL 33316-1118

Alan M. Gross, Esq.
4731 Central Ave.
Saint Petersburg, FL 33713-8139

Baker, Donelson, Bearman Caldwell &
Berkowitz, PC
1 Financial Plaza, Suite 1620
100 SE Third Ave.
Fort Lauderdale, FL 33394-0031

Bank of Tampa
c/o Steven Thompson, Esq.
314 E. Madison St., #900
Tampa, FL 33602

Capital One
P.O. Box 60599
Newark, DE 19716-0599

Denice English Galbreath
2692 Enterprise Rd. E., Apt. 1304
Clearwater, FL 33759-1054

Department of Revenue
PO Box 6668
Tallahassee, FL 32314-6668

Financial Portfolios II, Inc.
c/o Marcadis Singer, P.A.
5104 S. Westshore Blvd.
Tampa, FL 33611-5650

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Janis English
1586 Linwood Dr.
Clearwater, FL 33755-2139

Melisa Manganelli, Esq.
1900 NW Corporate Blvd., #305W
Boca Raton, FL 33431-7340

(p)MERCEDES BENZ FINANCIAL SERVICES
13650 HERITAGE PARKWAY
FORT WORTH TX 76177-5323

Pinellas County Tax Collector
P.O. Box 4006
Seminole, FL 33775-4006

Residential Credit Opportunities Trust VI-A
co FCI Lender Services Inc
PO Box 27370
Anaheim Hills, CA 92809-0112

Stephen E. Ayoub
3107 Peachtree Rd. NE., #1401
Atlanta, GA 30305-3371

Wilmington Savings Fund Society, FSB
3020 Old Ranch Pkwy., #180
Seal Beach, CA 90740-2799

United States Trustee - TPA7/13 7 +
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602-3949

Christian Savio +
Mandel, Mangaenlli & Leider, P.A.
1900 NW Corporate Blvd., Suite 305W
Boca Raton, FL 33431-7340

Mark F Robens +
Stichter, Riedel, Blain & Postler, PA
110 East Madison Street, Suite 200
Tampa, FL 33602-4718

Kelly Remick +
Chapter 13 Standing Trustee
Post Office Box 89948
Tampa, FL 33689-0416

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Mercedes Benz Financial
P.O. Box 5209
Carol Stream, IL 60197-5209

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Michael G. Williamson
Tampa

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
-------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case

End of Label Matrix
Mailable recipients    22
Bypassed recipients     2
Total                  24